UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
EDWARD GUMBS,

                Petitioner,

                -against-

ROBERT CUNNINGHAM, SUPERINTENDENT,
WOODBOURNE CORRECTIONAL FACILITY,

                Respondent.
-----------------------------------------------------------x

**MEMORANDUM & ORDER**

13 CV 5292 (RJD)

DEARIE, District Judge.

In his application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, petitioner Edwards Gumbs claims that he was subjected to double jeopardy and denied due process when the trial court corrected his original 15-year sentence, ten years after imposing it, to include a required term of post-release supervision ("PRS") that the court had initially failed to pronounce.

For the reasons set forth below, the application is denied and the petition is dismissed.

## BACKGROUND

### A.    Petitioner's Initial Sentencing

On May 18, 2001, petitioner was convicted in the County Court, Suffolk County, of Robbery in the First Degree.[1] On or about May 18, 2001, the court imposed a determinate sentence of 15 years' imprisonment but did not, at that time, pronounce a term of PRS.[2]

---

[1] The trial evidence established that on April 2, 2000, while armed with a kitchen knife, petitioner forcibly stole a wallet containing cash and credit cards from a customer outside the Shinnecock Smoke Shop on the Southampton Indian Reservation.

[2] Petitioner appealed this initial judgement of conviction on sufficiency and other grounds, all of which were rejected. People v Gumbs, 8 A.D.3d 677 (2d Dep't), lv. app. denied, 3 N.Y.3d (2004). Petitioner also pursued, without success, both state and federal postconviction relief

To be clear, it was not a matter of the court *declining* to impose PSR; rather, PRS was simply not broached, either by the State or the court, at the time of petitioner's original sentencing. The then-effective version of Section 70.45 of the New York Penal Law, however, provided, in pertinent part, as follows: "In general. Each determinate sentence also includes, as a part thereof, an additional period of post-release supervision." N.Y. Penal Law § 70.45 (1). Added L. 1998, c. 1, § 15, eff. August 6, 1998. The statute further provided for PRS periods of various lengths, but the parties agree here that in petitioner's case, the required term is 5 years.

The relevant jurisprudence, aptly summarized by commentators for historical purposes, explains that PRS did not arise as a matter of law by virtue of section 70.45's mandate but instead had to be formally imposed and, therefore, that many New York determinate sentences lacking PRS terms, like petitioner's, were considered defective. See Donnino, Practice Commentary, McKinney's Cons Laws of N.Y., 2016 Electronic Update, Penal Law § 70.45 (collecting and summarizing cases; reporting that for "perhaps thousands" of New York inmates, PRS was required as a component of the determinate sentence but not pronounced at the time of sentencing); Bonacquist, Practice Commentary, McKinney's Cons Laws of N.Y., 2016 Electronic Update, Correction Law 601-d (reviewing same cases; reporting that "[a]pparently under the mistaken belief that PRS arose as a matter of law, judges in many cases failed to include a period of PRS in the defendant's commitment order").

### B.   Ensuing Executive, Judicial and Legislative Action

---

from the initial judgment of conviction. See Gumbs v. Brown, 2010 WL 92775 (E.D.N.Y. Jan. 4, 2010) (denying section 2254 relief and setting forth the full procedural and factual record). For reasons discussed *infra*, the Court concludes that the current petition, although second in time, is not "second or successive" within the meaning of 28 U.S.C. § 2244(b).

The attempt to rectify these sentences came first from the Department of Correctional Services ("DOCS"). Upon detecting that PRS terms were absent from certain determinate-sentence commitment orders, DOCS took upon itself the task of correcting the sentences by administratively adding the required PRS period to the affected inmates' paperwork. Challenges to this practice culminated in decisions by the Second Circuit and, two years later the New York Court of Appeals, declaring the practice unlawful. See Earley v. Murray, 451 F.3d 71 (2d Cir. 2006) (holding that the Due Process Clause prohibited DOCS from administratively adding PRS terms to inmates' sentences and ordering habeas petitioner's PRS term excised), reh'g denied, 462 F.3d 147 (Aug. 31, 2006), cert. denied, 551 U.S. 1159 (June 25, 2007);[3] People v. Sparber, 10 N.Y.3d 457, 470 (2008) (holding that, by imposing PRS terms, DOCS usurped the judicial function as defined by New York law; *only* the sentencing court has the authority to impose the PRS component of the sentence and must do so at the time of sentencing); Matter of Garner v. New York State Dept. of Correctional Servs., 10 N.Y.3d 358 (2008) (decided the same day as Sparber, granting Article 78 petition barring DOCS from adding PRS terms to commitment orders). Sparber refused to expunge the administratively-imposed PRS terms but held, instead, that the "sole remedy . . . is to vacate the sentence and remit for a resentencing hearing so that the trial judge can make the required pronouncement." 10 N.Y.3d at 471.[4]

---

[3] In pronouncing that "[o]nly the judgment of a court, as expressed through the sentence imposed by a judge, has the power to constrain a person's liberty," Earley relies on Hill v. United States ex rel Wampler, 298 U.S. 460 (1936), which it identifies as the "clearly established Supreme Court law" on the due process question. 451 F.3d at 75. Wampler stands for the proposition that "[t]he only sentence known to the law is the sentence or judgment entered upon the records of the court." 298 U.S. at 464.

[4] The willingness of the Earley panel to excise that habeas petitioner's PRS term is not in conflict with Sparber; rather, the Earley opinion explains that, in ordering such relief, the court did "not intend[ ] to preclude the state from moving in the New York courts to modify Earley's sentence

3

The legislative response to <u>Sparber</u> and <u>Garner</u> was swift: the centerpiece was the new Correction Law 601-d, captioned "Post-Release supervision," which outlines the procedure for carrying out the <u>Sparber</u> resentencings.[5] Section 601-d applies, in pertinent part, to "inmates in the custody of [DOCS] ... upon whom a determinate sentence was imposed ... which was required by law to include a term of [PRS]." Id. The statute defines as a "designated person" any such inmate whose commitment order "does not indicate" that the required term of PRS was imposed, and directs DOCS, upon its determination that an inmate is a "designated person," to "make notification of that fact to the court that sentenced" that inmate. Id. The statute also sets forth the notice, timing and other parameters of the resentencing proceeding.[6]

Another component of the post-<u>Sparber</u> legislation is new Section 70.85 of the Penal Law. Entitled "Transitional exception to determinate sentencing laws," this provision offers the court the option, upon the consent of the district attorney, to reimpose the original sentence *without* a term of PRS. McKinney's Penal Law 70.85 (providing, in pertinent part, that "[w]hen ... a case is again before the court pursuant to [Correction Law § 601-d] ... for consideration of whether to resentence, the court may, notwithstanding any other provision of law but only on consent of the district attorney, re-impose the originally imposed determinate sentence of

---

to include the mandatory PRS term." <u>Earley</u> 451 F.3d at 77. As the Circuit recognizes, under New York Criminal Procedure Law § 440.40, the state may do exactly that—*i.e.*, move to have an illegal sentence vacated and the defendant resentenced by a judge. Id., n.2 (citing N.Y. Crim. Proc. Law § 440.40(1)). Such motions, however, must be made within one year of the entry of the judgment, so that remedy was not available to petitioner Sean Earley.

[5] <u>Sparber</u> and <u>Garner</u> were decided April 29, 2008; the new legislation took effect June 30, 2008. <u>See</u> Session Law 2008, c. 141, §§ 3 et seq.

[6] As noted in note 4, *supra*, without Correction Law§ 601-d, the available vehicle for correcting illegal sentences, motions under Criminal Procedure Law §440, had to be employed within a year of sentencing.

imprisonment without any term of [PRS], which then shall be deemed a lawful sentence"). See generally People ex rel. Joseph II. v. Southport Correctional Facility, 15 N.Y.3d 126, 131 (2010) ("Correction Law § 601-d and Penal Law § 70.85, enacted in response to *Garner* and *Sparber* and effective June 30, 2008, effectively give prosecutors in such cases a choice either to seek resentencing or to forgo PRS"), reh'g denied, 15 N.Y.3d 847 (2010).[7]

C. Petitioner's Sparber Re-Sentencing
   Pursuant to Correction Law §601-d

On or about February 9, 2011, after petitioner had served approximately ten years of his sentence, DOCS sent the County Court a letter advising that petitioner was a "designated person" within the meaning of Correction Law § 601-d. On March 1, 2011, the County Court Clerk issued a letter appointing the Legal Aid Society of Suffolk County to represent petitioner and initially calendaring the matter for March 17, 2011 "for a determination as to whether any action would be taken." At that proceeding, the state declined to consent under Penal Law §70.85 to re-imposition of the original sentence and asked the court to impose the omitted PRS term, while petitioner indicated that he would be filing a motion setting forth objections to the resentencing. Oral argument on that motion was held on April 13, 2011; petitioner was represented by counsel but also spoke on his own behalf, arguing that imposition of PRS at that point in time would deny him due process and subject him to double jeopardy because, in his view, he had a

---

[7] Finally, the new legislation amended Penal Law 70.45. Whereas the statute's former language (*i.e.*, that "[e]ach determinate sentence also includes, as a part thereof, an additional period of post-release supervision") allowed some to believe the PRS term arose by operation of law, the relevant new language is unambiguous: "[w]hen a court imposes a determinate sentence it shall in each case state not only the term of imprisonment, but also an additional period of [PRS] as determined pursuant to this article." McKinney's Penal law § 70.45 (1).

5

legitimate expectation in the finality of his sentence. He also argued that the court did not comply with the time limits set forth in section 601-d.[8]

The sentencing court granted the People's request and overruled each of petitioner's objections in a written decision. People v. Gumbs, Case No. 846-2000, slip. op. (Supr. Ct., Suffolk Co. April 25, 2011). In petitioner's presence, the court then orally pronounced sentence consisting of the original 15-year determinate term *and* the required five-year PRS term, which is reflected in an amended judgment dated May 25, 2011.[9]

Petitioner appealed the resentence, advancing the same claims he raised in the lower court (*i.e.*, due process, double jeopardy, and failure to comply with 601-d's time limits), all of which the Appellate Division rejected. People v. Gumbs, 105 A.D. 3d 759 (2d Dep't 2013), lv. app. denied, 21 N.Y.3d 1004(June 18, 2013). Affirming the resentence, the Appellate Division held that, "[s]ince [petitioner] had not yet completed his originally imposed sentence of

---

[8] Among other things, section 601-d requires that the sentencing court act, by issuing an order calendaring the matter and appointing counsel, within ten days of receiving DOCS' "designated person notice," Correction Law § 601-d (4)(a), whereas petitioner complains that here, the sentencing court's letter, dated March 1, 2011, was issued 20 days after the DOCS notice (dated February 9, 2011). Additionally, section 601-d(4) requires (i) that the proceeding to consider resentence be calendared no later than thirty days after receipt of the DOCS notice (here, that would be March 9, 2011, whereas petitioner complains that his proceeding did not occur until March 17, 2001), and (ii) that the court enter a written determination no later than 40 days after receipt of the DOCS notice (here, that would be on or about March 21, 2011, whereas petitioner complains that the decision was not issued until April 25, 2011). The sentencing court, in rejecting petitioner's time-limit objections, noted, among other things, that section 601-d expressly authorizes extension of the time limits on consent and that petitioner, through counsel, did so consent in asking for time to prepare the motion challenging the resentencing, and that in any event, under New York law, section 601-d's time limits "do not affect a court's inherent power to correct its error in sentencing." Gumbs, slip op. at 2 (collecting New York authorities).

[9] Although the Court has not been furnished with the transcript of the resentencing proceedings, the summary of what occurred, recounted here, is taken from the state court decision rejecting petitioner's resentencing objections.

6

imprisonment when he was resentenced, the resentencing to a term [that] included the statutorily required period of [PRS] did not subject him to double jeopardy or violate his right to due process of law." Gumbs, 105 A.D.3d at 760. The court also rejected petitioner's "remaining contention" (*i.e.*, non-compliance with 601-d's time-limits) as "without merit." Id.

## DISCUSSION

### A.  Threshold Issue: Jurisdiction

Neither party has addressed whether the petition is "second or successive" within the meaning of 28 U.S.C. § 2244(b)—a question on which this Court's jurisdiction to entertain the petition turns. See 28 U.S.C. § 2244(b)(1) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application"); Gonzalez v. Crosby, 545 U.S. 524, 530 (2005) (District court may not accept a successive petition unless and until court of appeals first determines that "it presents a claim not previously raised that is sufficient to meet § 2244(b)(2)'s new-rule or actual-innocence provisions");[10] Whab v. United States, 408 F.3d 116, 118 (2d Cir. 2005) (a "second or successive" habeas petition "may not be filed in a district court, unless the petitioner first obtains the authorization of the court of appeals, certifying that the petition conforms to specified statutory requirements"); Poindexter v. Nash,

---

[10] To obtain permission to file in the district court, a repeat petitioner must show the federal appellate court that the claim in his new petition either (i) "relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," or (ii) is based on a "factual predicate" that "could not have been discovered previously through due diligence" and that, if proven, "would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2244(b)(2).

333 F.3d 372, 382 (2d Cir.2003) (district court "must transfer" a successive petition to Second Circuit), cert. denied, 540 U.S. 1210 (2004).

In Magwood v. Patterson, 561 U.S. 320 (2010), the Supreme Court held that "where . . . there is a new judgment intervening between ... two habeas petitions, an application challenging the resulting new judgment is not second or successive at all." 561 U.S. at 341-42 (internal quotation and citation omitted). The Second Circuit initially enlarged Magwood when it held that a petition following an amended judgment may challenge not only the amended portion of that new judgment but also its "*un*amended component[s]." Johnson v. United States, 623 F.3d 41, 46 (2d Cir. 2010) (emphasis added).

Subsequently, however, in Marmolejos v. United States, 789 F.3d 66 (2d Cir. 2015), the Second Circuit held that "an amended judgment *merely correcting errors that were clerical* does not constitute a 'new judgment' within the meaning of Magwood and Johnson." 789 F.3d at 71 (emphasis added). Magwood and Johnson, the Circuit explained, "stand for the principle that when a judgment is entered on account of *new substantive proceedings* involving reconsideration of either the defendant's guilt or his appropriate punishment, it is a new judgment for purposes of [the habeas statute]." Marmolejos, 780 F.3d at 70 (emphasis added).

The Second Circuit has not addressed whether a Sparber resentencing is sufficiently "substantive" under Marmolejos to result in a "new judgment" for Magwood purposes, while district courts reaching the issue have come out both ways. Compare, e.g., Fields v. Lee, 2016 WL 889788, at *7 (S.D.N.Y. Jan. 28, 2016) (report and recommendation) (imposition of PRS "was not merely 'ministerial'" in part because relevant statute authorized re-imposition of original sentence on state's consent; therefore, "*Sparber* resentencing led to a new 'judgment' for the purposes of AEDPA"), adopted, 2016 WL 879319 (S.D.N.Y. Mar. 7, 2016), with Smalls v.

8

Lee, 2016 WL 5339501, at *8 (S.D.N.Y. May 24, 2016) (report and recommendation) (concludes that a Sparber resentencing "is not substantive and should not result in an amended judgment"), adopted, 2016 WL 5334986 (S.D.N.Y. Sept. 22, 2016). This Court finds, both because of the feature of Sparber resentencings noted in Fields (prosecutorial discretion to forgo PRS) and other features of the proceeding already reviewed, that the result in Fields is the more analytically sound. As noted, once the district attorney elected to request that PRS be imposed, counsel had to be appointed; time limits had to be either complied with or, as occurred here, become grounds for opposing the resentence; objections of a constitutional and state-law nature were advanced; time was allowed for these objections to be briefed; and a written decision resolving them had to issue. In short, the post-Sparber legislation did not merely mandate the imposition of omitted PRS terms by a clerical stroke of the court's pen but instead fashioned a resentencing protocol that includes important procedural safeguards and the opportunity to litigate the appropriateness of PRS in the individual case. The Court readily concludes, therefore, that petitioner's resentencing was a "new substantive proceeding" within the meaning Marmolejos, 780 F.3d at 70, that the resulting amended judgment is "new" under Magwood, and that the Court has jurisdiction to adjudicate the petition on the merits.[11]

---

[11] In declining to follow Smalls, the Court notes, first, that that decision understandably relies on a decision of the New York Court of Appeals characterizing "Sparber error" as "amount[ing] only to a procedural error, akin to a misstatement or clerical error" and the resentencing proceeding as not "plenary." Id., at *8 (quoting People v. Lingle, 16 N.Y.3d 621, 634 (2011)). At the same time, however, as Smalls also concedes, "the policy considerations motivating New York State courts in their analysis of Sparber may be different than those of a federal court analyzing the impact of Sparber on AEDPA's statute of limitations." 2016 WL 5339501 at *10. Second, Smalls concedes that "[a] Sparber resentencing. . . appears to be a unique procedural creature" and that the analogy to Marmalejos (where the clerical error was the correction of a typographical error in the defendant's name) is "not. . . seamless." Id. Finally, and in any event, although the issue is jurisdictional, the magistrate judge in Smalls felt "constrained to

9

Finally, the petition is also timely. The amended judgment became final on or about September 13, 2013, when the time for seeking United States Supreme Court review expired (which is ninety days from the date the New York Court of Appeals denied petitioner leave to appeal). Petitioner filed his habeas application less than thirty days later, on October 4, 2013—the same day, according to DOCS records, that he was released and began serving the five-year period of PRS challenged here.

## B. The Merits

Because the state appellate court reached the merits of the claims petitioner raises here, his application for habeas relief is subject to the constraints of 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Death Penalty Act of 1996 ("AEDPA").

That statute provides, in relevant part:

> AEDPA instructs that an application for a writ of habeas corpus shall not be granted where a state court adjudicated the claim on the merits, unless that adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Moss v. Colvin, __ F. 3d __, 2017 WL 74264, *2 (2d Cir. Jan 9, 2017) (quoting 28 U.S.C. § 2254(d)).

For purposes of section 2254(d)(1), "clearly established federal law, as determined by the Supreme Court of the United States," means only Supreme Court holdings, Thaler v. Haynes, 559 U.S. 43 (2010), "as opposed to the dicta", Williams v. Taylor, 529 U.S. 362, 412 (2000), or

---

recommend that [the state] waived the argument that [the] Sparber resentencing did not result in a new judgment." Smalls, 2016 WL 5339501 at *9.

the holdings of federal appellate courts, Carey v. Musladin, 549 U.S. 70, 74 (2006). "And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (internal quotations and citations omitted). Instead, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter 131 S. Ct. 770, 786-787 (2011).[12] See also Moss, 2017 WL 74264 at *2 ("A state court determination that a claim lacks merit is not objectively unreasonable if fairminded jurists could disagree on the correctness of the state court's decision.") (internal quotation marks and citation omitted).

Petitioner cannot make these formidable showings.

1.   **Double Jeopardy.**

As noted, to prevail, petitioner must show that, when rejecting his double jeopardy challenge to his resentencing, the Appellate Division acted contrary to or unreasonably applied clearly established Supreme Court double jeopardy holdings. The Court concludes that petitioner has not met this burden.

---

[12] Under the rarely invoked "contrary to" clause, which "ha[s] independent meaning," Bell v. Cone, 535 U.S. 685, 694 (2002), a state court decision is "'contrary to' clearly established federal law if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." Chrysler v. Guiney, 806 F.3d 104, 117 (2d Cir. 2015) (internal quotation and citation omitted).

11

The closest applicable Supreme Court precedent, and the decision on which double jeopardy analysis in PRS litigation begins, is United States v. DiFrancesco, 449 U.S. 117 (1980). In a multi-part holding, DiFrancesco concludes that the Double Jeopardy Clause prohibits alteration of an imposed sentence only if the defendant has a legitimate expectation of finality in that original sentence, 449 U.S at 136-38, and that the defendant in that case had no such expectation because a the statute at issue (the dangerous special offender statute) provided that the sentence was subject to appeal and to possible increase. Id. at 139.

DiFrancesco also emphasizes, first, that "[the] Court's decisions in the sentencing area clearly establish that a sentence does not have the qualities of constitutional finality that attend an acquittal," id. at 134, and second, that "[t]he Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." Id. at 137. Indeed, the Court further explains, "Congress has established many types of criminal sanctions under which the defendant is unaware of the precise extent of his punishment for significant periods of time . . . yet these sanctions have not been considered to be violative of the Clause." Id.

DiFrancesco highlights and reaffirms a much earlier Supreme Court precedent, Bozza v. United States, 330 U.S. 160 (1947), also applicable here. In Bozza, the defendant was convicted of a crime carrying a mandatory minimum sentence of fine and imprisonment, but the sentencing court, after initially imposing only a term of imprisonment, recalled the defendant later the same day to impose a rectified sentence that included the fine. The Supreme Court found that correcting the sentence did not subject the defendant to double jeopardy, remarking that "[t]he Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner." Bozza, 330 U.S. at 166-67. See also Earley, 451 F.3d

at 76 (the Second Circuit, treating the double jeopardy issue in the PRS context, reads Bozza as "provid[ing] that a sentencing court may increase a defendant's sentence when it has omitted a mandatory component of that sentence without running afoul of the Double Jeopardy Clause").

This Court readily concludes that it was not contrary to or an unreasonable application of DiFrancesco and Bozza for the Appellate Division to have concluded that petitioner did not have a legitimate expectation of finality in an imposed sentence lacking a statutorily-mandated component, and that the later curing of that omission did not place him in double jeopardy. Judge John Gleeson, on facts virtually identical to those presented here, reached the same conclusion. See Warren v. Rock, 12 CV 3101 (JG), 2012 WL 2421916, at *2 (E.D.N.Y. June 27, 2012) (holding, under DiFrancesco and appellate authority applying it, that resentencing to impose previously omitted term of PRS "did not violate double jeopardy, even though it occurred more than seven years after [the] original sentencing").[13] See also King v. Cuomo, 465 Fed. App'x 42 (2d Cir. Mar. 7, 2012) (in suit under 42 U.S.C.§ 1983, rejecting claim of prisoners that later imposition by DOCS of initially omitted PRS terms violated double jeopardy; reasoning that double jeopardy protections were not violated "'where . . . a legislature specifically authorizes cumulative punishment'") (quoting Missouri v. Hunter, 459 U.S. 359, 368 (1983)); Earley, 451 F.3d at 76 (concluding, before the enactment of Correction Law §601-d,

---

[13] Judge Gleeson also relied on a distinction, drawn by the New York Court of Appeals in a decision interpreting DiFrancesco and Bozza, between Sparber resentencings that occur while the defendant is still serving the custodial component of the sentence—which the Court holds do not create double jeopardy—and those that occur after the defendant has completed the originally imposed sentence and been released. In this latter situation, according to the Court of Appeals' reading of Supreme Court law, a defendant *has* acquired "'a legitimate expectation of finality that the sentence, although illegal under the Penal Law, *is* final and the Double Jeopardy Clause prevents a court from modifying the sentence to include a period of [PRS].'" Warren, 2012 WL 2421916 at *2 (quoting People v. Williams, 14 N.Y. 3d 198, 219-20 (2010), cert. denied, 131 S. Ct. 258 (2010)) (emphasis added).

that a motion under New York's Criminal Procedure Law § 440 to vacate illegal sentence and have defendant resentenced by a judge is "consistent with Bozza").

2. **Due Process.**

Likewise, the Appellate Division did not act contrary to or unreasonably apply clearly established federal law when it rejected petitioner's due process challenge to his resentencing. As noted, see note 3 *supra*, the Second Circuit in Earley identifies the Supreme Court's decision in Hill v. United States ex rel Wampler, 298 U.S. 460 (1936), as the "clearly established Supreme Court precedent" on the due process question presented in the omitted-PRS cases, and concludes that due process is satisfied when the term of PRS is imposed *by a judge*. Earley, 451 F.3d at 75-76. Petitioner's defective sentence was corrected in precisely this manner, before a judge during a Sparber/Correction Law § 601-d proceeding at which he was afforded and fully exercised his opportunity to be heard. No viable due process claim arises. See Warren v. Rock, 12 CV 3101 (JG), 2012 WL 3262893, at *2 (holding, under Wampler and Earley and on facts materially identical to those presented here, that a habeas petitioner's resentencing under Correction Law 601-d did not violate due process).[14]

Separately, and without disputing that a period of PRS was required by statute, petitioner complains that it was inherently unfair, and therefore also a violation of due process, for the state to have taken nearly a decade to correct the initial sentencing error. While petitioner's view is perhaps understandable, there is nothing in either the initial omission of the PRS term or the rectification through a Sparber resentencing to suggest the influence of the kind of egregious

---

[14] Some habeas courts facing virtually identical facts have concluded, instead, that where a judge imposed the PRS term at resentencing, the due process claim was moot. See, e.g., Edwards v. People of the State of New York, 08 CV 0112 (RJS), 2009 WL 4016412, at*2, *5 (S.D.N.Y. Nov. 18, 2009).

14

governmental action that would be necessary to implicate due process. Therefore, the timing of petitioner's resentence does not present a Constitutional issue. See, e.g., Martinez v. Superintendent of Eastern Correctional Facility, 2016 WL 6462123, at *6 (E.D.N.Y. Oct. 31, 2016) ("'No federal Constitutional issue is presented where . . . the sentence is within the range prescribed by State law.'" )(quoting White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992)).

### 3. State Law Claim

Petitioner's complaint that the state failed to comply with various time limits in Correction Law § 601-d is a wholly state law claim not cognizable on habeas. See generally 28 U.S.C. § 2254(a) (habeas corpus available only when a prisoner is "in custody in violation of the Constitution or law or treaties *of the United States*) (emphasis added); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

## CONCLUSION

For the reasons discussed, the application of petitioner Edward Gumbs for a writ of habeas corpus under 28 U.S.C. § 2254 is denied in its entirety and the petition dismissed. Further, Gumbs has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), so no certificate of appealability shall issue.

The Clerk is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
January /5, 2017

s/ RJD
_____
RAYMOND J. DEARIE
United States District Judge